**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **HAROLD HENIG,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1623** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Harold Henig ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 33).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary (ECF No. 33) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1958, has a college education, and previously worked as a paralegal and substitute teacher. R. at 20, 126-27. Plaintiff applied for DIB on January 4, 2010 (with a protective filing date of December 30, 2009), alleging disability beginning on August 17, 2009, due to Asperger's syndrome. R. at 94-97, 121, 125. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 54-59, 62-66. On December 2, 2011, ALJ Larry Banks held a hearing in Washington, D.C., at which Plaintiff, his wife, and a vocational expert ("VE") testified. R. at 27-53. On February 23, 2012, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of August 17, 2009, through the date of the decision. R. at 8-26. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 1, 2013. R. at 1-3, 7. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 5, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below the relevant evidence at issue in this case.

**A.    Opinion Evidence**

**1.    Charles Filson, Ed.D.**

The ALJ reviewed Dr. Filson's findings in his decision:

> In a neuropsychological consultation dated August 17, 2009, Dr. Charles R. Filson, Ed.D., administered several tests and reported an estimated full scale IQ of 77.   Dr. Filson indicated that [Plaintiff's] visuo-spatial memory is in general worse than his verbal memory performance.   Dr. Filson also indicated that [Plaintiff's] narrative writing sample demonstrated misspelled common words and considerable grammatical errors that would not be expected in a person with a graduate degree from Johns Hopkins.   Dr. Filson found that [Plaintiff] has difficulties with sequencing and executive functioning.

R. at 16-17 (citations omitted); *see* R. at 233-54, 338.

**2.    State Agency Consultants**

On July 22, 2010, P. Sokas, M.D., a state agency consultant, evaluated on a psychiatric review technique form ("PRTF") Plaintiff's memory impairment and Asperger's syndrome under Listings 12.02 and 12.10 related to organic mental disorders and autism and other pervasive developmental disorders.   R. at 293-306.   Dr. Sokas opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; and (3) moderate difficulties in maintaining concentration, persistence, or pace.   R. at 303.   Dr. Sokas did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.02. R. at 304.   Dr. Sokas thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 307-10) and opined that he was moderately limited in his ability to (1) remember locations and work-like procedures; (2) understand, remember, and carry out detailed instructions; (3) maintain

attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and to respond appropriately to criticism from supervisors; (8) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (9) respond appropriately to changes in the work setting; and to (10) set realistic goals or to make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 307-08. Dr. Sokas's RFC assessment thus provided:

> 52 year old man with Asperger's disorder and complaints of memory problems.

> [Plaintiff] reports history of work as a paralegal and also reports earning a master's degree from Hopkins.  He complains of episodes of confusion and short-term memory problems.  Work-up for organic causes, including blood studies, EEG, MRI, and PET scan, all were entirely benign, without any evidence of cerebral atrophy or insult.  Neuropsychological evaluation showed evidence of limitations in some [areas] of memory and executive functioning, but no evidence that they were recently acquired.

> On current psychological [consultative examination], [Plaintiff] scored in average range for auditory memory but very impaired range for visual memory. WAIS-IV Working Memory also was average.  [R. at 283-92.]

> [Activities of daily living] indicate that [Plaintiff] at times is slow in tasks, but negotiates fully independently in the community, driving, shopping, managing finances.

> The psychiatric conditions may impose partial or intermittent limitations of memory, sustained concentration, reliability, task persistence, adaptation, and work-related social functioning.

> [Plaintiff] retains the ability to learn and carry out routine tasks.

R. at 309.

On February 15, 2011, another state agency consultant, G. Dale, Jr., Ed.D., also evaluated on a PRTF Plaintiff's mental impairments under Listings 12.02, 12.04, 12.06, 12.08, and 12.10. R. 340-53.  Dr. Dale opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 350.  Dr. Dale also did not find evidence to establish the presence of the criteria under paragraph C of Listings 12.02, 12.04, and 12.06 (R. at 351), so Dr. Dale also assessed Plaintiff's mental RFC (R. at 354-57) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) respond appropriately to changes in the work setting; and to (7) set realistic goals or make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 354-55.  Dr. Dale's mental RFC assessment provided:

> [Plaintiff] therefore, amid problems with cognition/memory should nevertheless be able to remember, understand and follow simple instructions given what appears to be enough cognitive and functional sufficiency as indicated via the [consultative examination], [activities of daily living] and related data. [Plaintiff] appears to have the capacity to maintain sustainability in concentration, persistence and pace at the moderate limitation level in terms of simple repetitive tasking and the following of simple instructions.  [Plaintiff] has concurrent ability to take care of his personal needs and navigate his social environment.

> Therefore, [consultative examination], [activities of daily living] and [medical evidence of record] indicate the presence of a mental impairment.  From a psychiatric functional perspective, [Plaintiff] should be able to make

adjustments [required] to perform some type of simple repetitive task related functions and activities in a setting that has minimal social interaction.

R. at 356.

### 3.    Cheryl Mawo, LCSW-C

In a letter dated February 11, 2011, Cheryl Mawo, a clinical social worker and psychotherapist, noted the following:

> I have been seeing [Plaintiff] in therapy for almost six years. By history, I suspect that [Plaintiff] had significant difficulties as a child due to a probable combination of developmental disorders, anxiety, and overly critical parenting. He is an only child, and both of his parents are deceased. His parents both developed dementia at the end of their lives.

> [Plaintiff] had psychological testing in 2009 by an outside psychologist that determined that his IQ is probably at the lower end of average and that he has difficulties with sequencing and executive functioning, including conceptualizing and attention problems. He and his wife report that he has increased confusion and short-term memory loss.

> I have diagnosed [Plaintiff] with Asperger's Syndrome. The traits he exhibits are strict adherence to repetitive routines as abrupt changes in routines cause severe distress, difficulty thinking and acting outside the box, difficulty reading facial and body language, unaware of other's [sic] feelings or emotions, difficulty understanding nuances which leads to black and white thinking, detailed concise instructions needed to complete tasks, inability to talk about his own feelings, clumsiness, inability to generalize, socially awkward, low tolerance for frustration, and difficulty making "small talk." [Plaintiff] also has symptoms of Generalized Anxiety Disorder and low level depression (Dysthymia). These cause him to have impaired judgment and unrealistic expectations.

> I have also diagnosed [Plaintiff] with Avoidant Personality Disorder which involves a "pervasive pattern of social inhibition, feelings of inadequacy, and hypersensitivity to negative evaluation that begin [sic] by early adulthood and is present in a variety of contexts." (DSM-IV)

R. at 338-39. Ms. Mawo's diagnoses also included a GAF rating of 55.[2] R. at 339. Regarding Plaintiff's treatment, Ms. Mawo noted:

---

[2] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n,

> Treatment has been in the form of cognitive-behavioral therapy and psychodynamic therapy. His odd social behavior and eccentricities have made it very difficult for him to find and hold jobs; he has frequently been laid off. His sole employment for some time has been a few days of substitute teaching per year.

R. at 339.

## B.    Hearing Testimony

### 1.    Plaintiff's Testimony

The ALJ reviewed in his decision Plaintiff's testimony:

> At the hearing, [Plaintiff] testified that he works part-time as a substitute teacher for Montgomery County Public School system. He testified that his work schedule varies depending upon on [sic] whether his employer calls him to work. He testified that some weeks, he works approximately two days per week and other weeks, he works three days per week or none at all. As a substitute teacher, he testified that he presents the classroom assignments, reviews the teacher's lesson plan, and ensures that students behave and maintain discipline.

> In addition, he testified that when he worked for the Census Bureau for a month and a half, he had no problems doing this type of work.

> When he was working as a paralegal, he developed memory problems. He testified he has difficulty following directions and problems with short-term memory. He also testified that when his wife asks him to complete a task like clean the shower, he does it. He testified that he does not need directions or prompting from his wife to complete a task.

> When asked by the undersigned what would prevent him from performing physical labor on the job, he testified that his concern about physical labor is that he has arthritis in the right knee. He testified that he "could probably do custodian work if he decided to do it[."]

R. at 15-16; *see* R. at 30-39.

---

*Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34. The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

### 2.      Plaintiff's Wife's Testimony

The ALJ also reviewed the testimony of Plaintiff's wife:

Ms. Henig testified that [Plaintiff] has difficulty with memory and expressing himself and forgets the goal of a given project. She provided the following examples. She testified that she requires him to save phone messages because he often gets the messages wrong. She also testified that he calls several times from the grocery store to ask about the items he is supposed to buy and that it takes him an hour and a half to buy three items even though the grocery store is five minutes away from their home. She indicated that he fails to read the instructions on a frozen meal and has a general inability to follow directions. She indicated that one school asked that [Plaintiff] not return because he required that all students in his ESL class speak English. She stated that when [Plaintiff] worked for the Census bureau, he had difficulty finding the locations he was supposed to visit.

R. at 16; *see* R. at 40-47, 153-62.

### 3.      VE Testimony

The VE classified Plaintiff's past work as a paralegal as sedentary and skilled and his past work as a substitute teacher as light and semi-skilled.[3]  R. at 47.  A person with Plaintiff's same age, education, and work experience could not perform Plaintiff's past work if that person could perform at all exertional levels, but had moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace, resulting in being limited to performing simple, routine, and unskilled tasks not involving significant stress (thus excluding production-line type work) and involving no more than occasional contact with co-workers, supervisors, or the public.  R. at 47-48.  This person, however, could do the medium, unskilled

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 404.1567(b). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." *Id.* § 404.1568(b). "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id.* § 404.1568(c).

jobs of kitchen helper or laundry worker and the light, unskilled jobs of officer helper or stock clerk.[4]  R. at 48-49.  A person could not maintain any of these jobs if that person would have deficits in attention up to a third of a workday.  R. at 50.  A 20% loss in productivity would result in an inability to maintain substantial gainful activity.  R. at 50-51.

### III

### Summary of ALJ's Decision

On February 23, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of August 17, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a kitchen helper, laundry worker, office helper, or stock clerk.  R. at 13-21.  The ALJ thus found that he was not disabled from August 17, 2009, through the date of the decision.  R. at 22.

In so finding, the ALJ found that Plaintiff had the RFC

to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] has moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace resulting in being limited to performing simple, routine unskilled tasks not involving significant stress (exclude production line type work) and involving no more than occasional contact with co-workers, supervisors, or the public.

R. at 15.

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* § 404.1568(a).

Regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. at 16. The ALJ found that Plaintiff's "memory difficulties are not severe and that there are still jobs he could perform even with moderate memory and mental limitations as described . . . by the vocational expert." R. at 16. "[Plaintiff's] complaints regarding the frequency, severity and duration of his difficulty with memory and concentration and problems with social functioning are inconsistent with the objective medical evidence and other evidence of record." R. at 19.

The ALJ also weighed the opinion evidence in the record, giving "slight" weight to Ms. Mawo's opinion and "substantial" weight to the opinions of Drs. Dale and Sokas "to the extent of the residual functional capacity determined above." R. at 17, 19, 20.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C.
§§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social
Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the
regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124
S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made,
the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at
379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production
and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct.
2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is
engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner
looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination
of impairments that significantly limits the claimant's physical or mental ability to do basic work
activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c),
404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do
most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include
(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,
carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding,
carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at
141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.    20 C.F.R.  §§ 404.1520(a)(4)(iv),  404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-9, ECF No. 19-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 5. In particular, he asserts that the ALJ failed to evaluate properly (1) the medical evidence of record; (2) the observations of the claims representative who met with Plaintiff at the time he applied for benefits; and (3) the statements and testimony of Plaintiff's wife. *Id.* at 5-9. For the reasons stated below, Plaintiff's arguments are unavailing.

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

"assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> basis, including the functions" listed in the regulations.  "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."  The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)

(citations omitted).  The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

that remand would prove futile in cases where the ALJ does not discuss functions that are

'irrelevant or uncontested.'"  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

(per curiam)).  Rather, remand may be appropriate "where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki*,

729 F.3d at 177).  The court in *Mascio* concluded that remand was appropriate because it was

"left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform

relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform

them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address.  *Id.* at 637.

Plaintiff contends that remand is warranted because, in finding that his memory

difficulties were not severe (R. at 16), the ALJ did not mention Dr. Filson's findings that

Plaintiff

> had demonstrated a significant impairment on a simple test of attention and
> sequencing, did not mention that the Plaintiff was had [sic] been unable to
> perform the Wisconsin Card Sorting Test, did not mention that the Plaintiff had
> demonstrated severely impaired total recall and delayed memory, and . . . that the
> Plaintiff had had marked difficulty with calculations.

Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 19-1; *see* R. at 238.   According to Plaintiff, the ALJ erred in not explaining how, in light of Dr. Filson's test results, the ALJ determined that Plaintiff's memory problems were not severe.   Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 19-1.   Plaintiff also complains that the ALJ did not explain how these test results were incorporated into the ALJ's RFC assessment.   *Id.*

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."   *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).   As the Commissioner points out, the ALJ gave "substantial" weight to the opinions of the state agency consultants (R. at 19-20), who reviewed the results of Dr. Filson's consultative examination (R. at 305, 309, 356) in determining Plaintiff's functional limitations.   *See Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir.) (per curiam) (finding harmless error in ALJ's failure to discuss consultative examiner's report because report was discussed by state agency consultants, whose opinions were given "great weight" by ALJ, and was consistent with medical evidence on record), *cert. denied*, 135 S. Ct. 727 (2014).   Because Plaintiff "provides no analysis of how a 'more detailed' assessment . . . might have resulted in a different outcome," *Seifert v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG–11–1051, 2013 WL 1881065, at *2 (D. Md. May 2, 2013), his contention in this regard is unavailing.

Plaintiff also asserts that the ALJ "improperly rejected" Ms. Mawo's opinion because the ALJ found that her opinion was "not fully supported by the evidence of record" (R. at 17).   Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 19-1.   A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is

consistent with the other substantial evidence in the record.   20 C.F.R. § 404.1527(c)(2).

Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a

treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171,

178 (4th Cir. 2001).   "[I]f a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less weight."

*Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating

physician's opinion is to be accorded comparatively less weight if it is based on the physician's

limited knowledge of the applicant's condition or conflicts with the weight of the evidence."

(citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))).   An ALJ may reject a treating

physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate

reasons for doing so.   *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014)

(per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76

F.3d at 589-90).

Here, instead of rejecting Ms. Mawo's opinion, the ALJ gave it "slight" weight because it

was inconsistent with the record (R. at 17), which the ALJ reviewed in his decision (R. at 13-20).

As the Commissioner points out, Plaintiff does not explain what additional limitations should

have been included in the ALJ's RFC assessment in light of Ms. Mawo's report.   Def.'s Mem.

Supp. Mot. Summ. J. 13, ECF No. 33-1.   "[I]f the decision 'is overwhelmingly supported by the

record though the agency's original opinion failed to marshal that support, then remanding is a

waste of time.'"   *Bishop*, 583 F. App'x at 67 (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th

Cir. 2010) (Posner, J.)).   Because Plaintiff "has failed to point to *any* specific piece of evidence

not considered by the Commissioner that might have changed the outcome of his disability

claim," Plaintiff's argument regarding the ALJ's consideration of Ms. Mawo's opinion also is unavailing. *Reid*, 769 F.3d at 865.

Plaintiff next asserts that remand is warranted because the ALJ "failed to mention or evaluate the observations of the Claims Representative who met with the Plaintiff at the time he filled his application for benefits." Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 19-1. The claims representative noted that Plaintiff "had difficulty focusing on individual questions as asked, kept wanting to give all sorts of unnecessary details and trivia about his jobs." R. at 122. Again, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Reid*, 769 F.3d at 865. "The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." *Id.* "The ALJ's sole responsibility was to consider the application processor's comment, not to discuss the comment in his opinion. The processor's statement was part of the List of Exhibits attached to the ALJ's decision." *Thomas v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3683, 2013 WL 66538, at *2 (D. Md. Jan. 2, 2013). Because the Court "cannot find that the ALJ either failed to consider it or would have reached a different result had it been considered," Plaintiff's argument is without merit. *Id.*

Plaintiff also maintains that the ALJ failed to evaluate properly his wife's statements and testimony. Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 19-1. According to Plaintiff, the ALJ did not address this evidence, instead determining that Plaintiff's daily living activities were inconsistent with his claims of totally disabling limitations (R. at 16, 291). *Id.* at 8-9. Plaintiff contends that remand is warranted because the ALJ did not address his wife's testimony regarding the difficulty with which he performed these activities. *Id.*

The regulations "require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).  In determining Plaintiff's credibility, the ALJ reviewed the testimony of Plaintiff's wife in his decision before ultimately finding that Plaintiff's activities, including his part-time work as a substitute teacher, belied his allegations of disabling mental impairments (R. at 16).  *See Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities.  [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor.  [The claimant] also testified that she can lift approximately ten pounds.  The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Douglas v. Barnhart*, 130 F. App'x 57, 59 (8th Cir. 2005) (per curiam) (claimant's part-time work and reported daily activities can be reasons for discounting allegations of disabling pain); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (part-time work may demonstrate ability to perform substantial gainful employment (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992)); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *Boudreau v. Colvin*, Civil No. BPG-14-2055, 2015 WL 1757470, at *4 (D. Md. Apr. 16, 2015); 20 C.F.R. § 404.1529(c)(3)(i). "Work activity that is not both substantial and gainful is still 'evidence relevant to the severity of

[the claimant's] impairment[s],' and as such must be considered in assessing the severity of a claimant's symptoms." *Sherman v. Colvin*, No. 4:13-CV-00020, 2014 WL 3344899, at *9 (W.D. Va. July 8, 2014) (alteration in original) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).  Because substantial evidence supports the ALJ's determination of his credibility, Plaintiff's contention regarding the ALJ's consideration of his wife's testimony is unavailing.  See *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

The Court further notes that, in finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (R. at 14-15), the ALJ found that, "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties."  R. at 14.  The ALJ's hypothetical questions to the VE included mental limitations regarding "moderate difficulties in social functioning and moderate difficulties in concentration, persistence, or pace, which results in the person being limited to performing simple, routine, unskilled tasks, not involving significant stress" that excluded production-line work and involved "no more than occasional contact with coworkers, supervisors, or the public."  R. at 48.  In his decision, the ALJ's assessment of Plaintiff's RFC included a finding that he had "moderate difficulties in concentration, persistence or pace resulting in being limited to performing simple, routine unskilled tasks not involving significant stress (exclude production line type work) and involving no more than occasional contact with co-workers, supervisors, or the public."  R. at 15.

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.*

The ALJ in this case found that Plaintiff was limited to simple, routine, and unskilled work because of his moderate limitations in concentration, persistence, or pace (R. at 15), but the ALJ also included in his RFC assessment and hypothetical questions to the VE a corresponding limitation that excluded Plaintiff from work involving significant stress, such as production-line type work (R. at 15, 48). *See Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."). Thus, rather than merely finding that Plaintiff's moderate difficulties in concentration, persistence, or pace limited him to simple, routine, and unskilled work (R. at 15), the ALJ in his RFC assessment and hypothetical questions to the VE also accounted for Plaintiff's inability to work in jobs not involving significant stress by excluding production-type line work (R. at 15, 48), which accounts for moderate difficulties in maintaining concentration, persistence, or pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to

fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). Thus, even though the ALJ erred in limiting Plaintiff to simple, routine, and unskilled work because of his moderate difficulties in maintaining concentration, persistence, or pace, the error was harmless. *See Geisler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (finding that ALJ harmlessly erred in basing step-three determination on claimant's difficulties in performing complex tasks because, *inter alia*, ALJ's RFC assessment accounted for limitations in concentration, persistence, or pace).

Moreover, the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 16) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio*, 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)). Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's

RFC.  *See id.*  "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other.  Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity."  *Id.*  In this case, however, the ALJ's use of the problematic boilerplate language does not require remand because the ALJ "properly analyzed [Plaintiff's] credibility elsewhere" and explained "how he decided which of [Plaintiff's] statements to believe and which to discredit" (R. at 15, 17, 19).  *Id.* at 639, 640; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 33) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**.  The Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.


Date: August 26, 2015                                 _____/s/_____
                                                      Thomas M. DiGirolamo
                                                      United States Magistrate Judge